GERTRUDE CHEEK, Plaintiff-in-Error, v. TROY E.
FULLER, Defendant-in-Error. —322 S. W. (2d) 233.

Eastern Section.   July 15, 1958.

Certiorari denied by Supreme Court December 12, 1958.

Francis W. Headman, Knoxville, for plaintiff in error.

Carter B. Wall, Stuart Dye, Knoxville, for defendant in error.

CARNEY, J. The plaintiff below, Gertrude Cheek, has appealed in error from the verdict of the jury and judgment of the court thereon in favor of the defendant. The plaintiff, Mrs. Cheek, brought suit for damages for personal injuries sustained on December 22, 1956, while riding as a passenger in the automobile owned by and driven by the defendant, Troy E. Fuller, in Knoxville, Tennessee. The accident occurred when Fuller's car left the highway and struck a post.

The plaintiff sustained very severe injuries including multiple fractures of her lower jaw. Her hospital bills

approximated $1,000 and medical doctors' bills approximated some $750. She was hospitalized over nine weeks.

The plaintiff has filed nine assignments of error as follows:

## "I

"There is no material evidence to support the verdict of the jury.

## "II

"The Court erred in applying the rule to the rebuttal witnesses, Dorotha Bunch and Eula Nichols.

## "III

"The court failed to correctly state the rule of contributory negligence as applicable to the facts in this case.

## "IV

"The court was in error in reference to failure to properly explain to the jury the difference between proximate and remote contributory negligence.

## "V

"The charge of the court was erroneous and confusing in reference to the proximate cause of the accident.

## "VI

"The court failed to properly explain to the jury the meaning of driving while under the influence of an intoxicant, as applied to the facts of this case.

## "VII

"The action of the court was such as to be highly prejudicial in the eyes of the jury to the interest of the original plaintiff.

## "VIII

"The court was in error in failing to charge the law applicable to gross, willful or wanton negligence.

## "IX

"The court's ruling on certain objections to testimony made by counsel for the plaintiff in error were erroneous and prejudicial to her interest."

The record reveals the following facts: The plaintiff is a widow in her 50's employed as a laundress in one of the Knoxville hospitals. She was a close friend of Mrs. Nichols, the owner and operator of the A & E Grill located in south Knoxville.

The A & E Grill is a very small establishment approximately 12 by 36 feet in area with seating capacity for 22 persons. The Grill has two sets of booths, one table with chairs and the rest are stools at a counter. Mrs. Nichols is in the active charge of operating said business and according to her testimony the principal business is the sale of beer at retail though they do serve sandwiches and a few plate lunches.

The plaintiff, Mrs. Cheek, has been a friend of Mrs. Nichols for several years and has been accustomed to patronizing the A & E Grill regularly over these years both for the purpose of visiting Mrs. Nichols and to drink beer. In describing Mrs. Cheek, Mrs. Nichols says "Mrs.

Cheek drinks like all the rest of us do, but as far as being drunk, I don't know anything about her being drunk.''

On the night of the unfortunate accident Mrs. Cheek and her sister, Miss Dorotha Bunch, had been to a nearby cemetery to put flowers on their parents' graves; they stopped back by the A & E Grill accompanied by their friend and neighbor, Mr. McLemore.

Mrs. Cheek and her sister, Miss Bunch, took a seat in one of the booths and ordered a bottle of beer each. They were joined by Mr. Eugene Lewellyn who, according to his testimony, had already been in the Grill some time drinking beer before Mrs. Cheek and her sister came in. Shortly thereafter the defendant, Troy E. Fuller, who had never been to the Grill before appeared upon the scene and joined the parties at or near the booth. The testimony is conflicting as to just what happened at this particular time. Mr. Fuller testified that he joined the group and sat down with them whereas Mrs. Cheek insisted that he did not sit down.

At any rate, it is conceded that Mr. Fuller had previously been drinking both beer and whiskey and had earlier been to an area in the vicinity known as Redbud Drive where he purchased a pint of whiskey. On this occasion he had been accompanied or guided to the place by Tate Johnson, one of the witnesses.

After a lapse of some time Mr. Fuller expressed the desire to buy some more whiskey and asked Mr. Lewellyn, who apparently was familiar with the area, to drive him or accompany him to the bootlegger for some more whiskey. Mr. Lewellyn said that he demurred because he himself had been drinking but agreed to go in the car

with Mr. Fuller. Thereupon Mr. Lewellyn, Mrs. Cheek and her sister, Miss Bunch, left the A & E Grill in Mr. Fuller's car, with Mr. Fuller driving, sometime after 6:00 P.M. and proceeded toward Redbud Drive. Somewhere along the way Mr. Fuller decided not to go to Redbud Drive and turned his car around and started back toward Knoxville. Neither Mrs. Cheek nor Miss Bunch had ever met Mr. Fuller before this particular evening.

On the return trip his car got out of control, left the road and crashed into a pole or post. The Knoxville Police arrested Mr. Fuller on charges of driving while drunk, gave him a drunkometer test which Mr. Fuller says he "flunked" and Mr. Fuller was fined in City Court for driving while drunk.

In her direct testimony the plaintiff stated that she met Mr. Fuller for the first time on the evening in question at the A & E Grill and she did not realize at that time that he had been drinking; that he did not drink anything in the presence of her and her sister and that she herself had drunk only one-half of the bottle of beer which she had ordered and that her sister, Miss Bunch, had drunk none of the beer which she had ordered.

It was her contention that she had not had anything to drink before coming to the A & E Grill. Further, she testified that she noticed nothing wrong with Mr. Fuller's conduct there in the Grill and it was not until she was in the car and Mr. Fuller had begun to drive recklessly and too fast that she realized he was not in a fit condition to drive the automobile. The plaintiff, Mrs. Cheek, was sitting on the front seat beside Mr. Fuller and her sister and Mr. Lewellyn were on the the back seat. Mrs. Cheek stated that it was on her suggestion that Mr. Fuller changed his mind about going to the Redbud Drive area

for the second purchase of whiskey and turned the automobile around for the trip back to the Grill.

Mr. Fuller, age 35, testified that he was employed as a mechanic and stopped by the A & E Grill on Saturday, December 22, 1956, about 3:30 or 4:00 P.M. for the first time in his life; that he had wished many times that he had never gone in there that afternoon; that he had drunk beer on his first visit to the Grill that afternoon.

Further, Mr. Fuller related that he and the witness, Tate Johnson, purchased a pint bottle of whiskey from a bootlegger in the Redbud Drive area and returned to the A & E Grill; that after he and Johnson had drunk one-half of the pint he approached the booth where Mrs. Cheek and Miss Bunch were seated along with Mr. Lewellyn.

From the transcript we quote a portion of Mr. Fuller's testimony as follows:

"Q. Before you went in the second time, did you have anything other than beer to drink? A. Before the first time I went in I had had a beer to drink.

"Q. Before you went in the second time had you had anything but beer to drink? A. Beer and whisky.

"Q. When you went in the second time did you take a bottle with you? A. That's right.

"Q. What size? A. A pint bottle.

"Q. Where did you carry it? A. In my hip pocket.

"Q. On this second occasion when yon went in there, did you see the Bunch girls there? A. The second time. Yes.

"Q. Did you have any conversation with them? A. Well, the second time I started in and Tate Johnson and I had been upon Redbud Drive to get a pint of whisky, and as we were coming back in there Mrs. Cheek asked me, says, 'Say, haven't I saw you somewhere before?', and Tate Johnson he walked on back, and I walked over to the table where they were sitting, and I said, 'I don't remember seeing you anywhere before', and they asked me if I was raised here, and I said, 'No. I was born in Mississippi and raised up in Louisiana and joined the Army there, and spent nine years and two months in the Army, and got discharged and came to Knoxville.'

"Q. What else was said there? A. She said, 'I have saw you somewhere before,' asked me where all I had been, and I said 'Fort Benning, Georgia, Fort Knox, Kentucky, and West Point, New York,' and she said, 'Well, I have saw you in Kentucky.'

"Q. Was Mr. Lewellyn there at that time? A. He was. Yes, sir.

"Q. Did you sit down there in the booth with them? A. Yes. They told me to sit down.

"Q. Did you do that? A. I did.

"Q. After you sat down there, did you have anything to drink there? A. They were out of beer, and one said Gene had been buying beer, and I said, 'I will order one,' and in the meantime Miss Bunch says, 'Don't be a tightwad, pull that bottle out of your pocket.'

"Q. Did you? A. I pulled it out and one of them went and got glasses and I kind of equalized it up,

poured the glasses and drank the rest out of the bottle.

"Q. How much had you had when you poured those drinks? A. Approximately a half pint.

"Q. Did Mrs. Cheek drink some whisky? A. She did.

"Q. Did she drink some beer? A. Yes.

"Q. Did you drink whisky in her presence? A. Yes.

"Q. Did you drink beer in her presence? A. I did.

"Q. Where were you going when you left there? A. I was going to get another pint of whisky and go home, and Gene spoke up and said, 'Do you mind if we go along?' And I said, 'No, I am going to get me a pint and going home,' and he said they knew where to go, where we can get it, and I said, 'I think I know too.' I had been up there before that afternoon, and they went back and asked someone, Miss Bunch did, did they want her to get her some while she was up there, and I don't know whether they gave her the money for it or not.

"Q. Did you leave shortly after that conversation took place? A. That's right.

"Q. Which way did you go when you left the A & E Grill? A. Across the street there where my car was parked in the parking lot beside Bondurant Brothers.

"Q. Which way did you go? A. I went up Sevier and turned all the way up Sevier out toward old Sevierville Pike, and I just don't know how far I

went out there and had trouble locating where I had been. Where we had been was somewhere out in that direction.

"Q. Did you or not lose you way? A. Yes. I lost my way.

"Q. Is that the reason you turned around? A. And turned around and started back.

"Q. On the way back did you have a wreck? A. That's right."

Mr. Lewellyn testified that he was already at the A & E Grill when the plaintiff and her sister came in and that he had been drinking beer at the time; that when Mr. Fuller came up to the booth where they were sitting it was readily apparent to him, Lewellyn, that Mr. Fuller was drinking and that also the plaintiff and her sister appeared to have been drinking at the time they came to the A & E Grill.

Further, Mr. Lewellyn stated that he didn't see why the plaintiff and her sister couldn't have told that Mr. Fuller was drinking and that if he, Lewellyn, had not been drinking he would not have gotten into Mr. Fuller's car knowing that Mr. Fuller was in such condition.

One of the cases cited and relied upon by the plaintiff-in-error is Edenton v. McKelvey, 1948, 186 Tenn. 655, 212 S. W. (2d) 616. In that case the plaintiff, Miss McKelvey had been injured in a collision of an automobile driven by a companion for the evening when the parties were returning from a dance.

The plaintiff had testified that at one time she thought maybe the defendant driver of the car was drinking but

she could not smell it. The jury returned a verdict for the plaintiff approved by the Trial Judge.

The Court of Appeals of Tennessee in a five to four decision reversed the case and directed a verdict in favor of the defendant on the grounds that the plaintiff was guilty of contributory negligence as a matter of law, upon the authority of Schwartz v. Johnson, 152 Tenn. 586, 280 S. W. 32, 47 A. L. R. 323.

Our Supreme Court in an opinion by Chief Justice Neil referred to the cases of Hicks v. Herbert, 173 Tenn. 1, 113 S. W. (2d) 1197, and Schwartz v. Johnson, supra, and held that the Court of Appeals was in error and that it was a matter for the jury to determine whether or not the plaintiff was guilty of contributory negligence in riding in the car with the driver of the automobile.

Chief Justice Neil quoted with approval from Volume 4, Blashfield, Cyclopedia of Automobile Law and Practice, Perm. Ed., pages 607, 608 as follows:

"Briefly, actual ascertainable intoxication is essential, and no contributory negligence in this connection can be asserted where, at the crucial time of undertaking or continuing the status of guest, the operator of the motor vehicle is not intoxicated to the knowledge of the guest, or to such extent that the latter is to be charged with knowledge; and, where at the inception of the journey and during its early progress, nothing in the driver's conduct betrays his being under the influence of liquor, the guest is not deemed at fault in intrusting himself in a vehicle under such driver's control. And where the guest has no opportunity to alight after discovering that the driver is intoxicated, he is not negligent."

In our opinion upon the authority of Edenton v. McKelvey the plaintiff, Mrs. Cheek, made out a case to entitle her to go to the jury and if the jury had believed her testimony then she would have been entitled to a verdict.

■ However, unfortunately for her, the jury did not believe her testimony but on the contrary apparently believed that the plaintiff did know or should reasonably have known that the defendant was drinking and under the influence of an intoxicant and that therefore she was guilty of proximate contributory negligence in riding in the car with him. We think there was ample evidence to support the finding of the jury and assignment of error No. I is respectfully overruled.

Assignment of error No. II insists that the Trial Court was in error in instructing the jury to disregard the testimony of two witnesses for plaintiff offered in rebuttal because the witnesses had been under the rule and had discussed or heard discussed the testimony of prior witnesses before testifying on rebuttal. This rebuttal testimony consisted primarily of denials, on the part of two witnesses, that there had been any whiskey drunk at the A & E Grill prior to the time the parties left with Fuller to buy more whiskey.

■■ We are of opinion that His Honor was probably in error in applying the rule to these witnesses who were offered in rebuttal since the rule is not generally applied as against rebuttal witnesses. Hughes v. State, 126 Tenn. 40, 90, 148 S. W. 543. However, in our opinion this excluded testimony was merely cumulative and its exclusion did not affect the results of the trial and for that reason does not constitute reversible error. T. C. A. sec. 27-117.

Assignments of error III, IV, V, VI, VII, and IX are too vague and too general and do not substantially comply with Rule 11, sub-paragraphs 2 and 3 of this court. Therefore, they must be respectfully overruled.

Assignment of error No. VIII insists that the Trial Court was in error in failing to charge the law applicable to gross, willful or wanton negligence. In the case of Schwartz v. Johnson, 152 Tenn. 586, 280 S. W. 32, 47 A. L. R. 323, the contention was made that the plaintiff was relieved of the contributory negligence because of the willfulness on the part of the person driving while intoxicated. From said opinion at page 593 of 152 Tenn., at page 33 of 280 S. W. we quote as follows:

"We do not think there is any showing of willful negligence on the part of young Johnson which would relieve the plaintiff's intestate of the effect of his contributory negligence. Willful negligence involves deliberation and malice, and there was nothing of the kind here. The Johnson boy was merely drunk, and his operation of the automobile was not influenced by any evil purpose or design."

We think such language is particularly appropriate here and if the jury found proximate contributory negligence on the part of the plaintiff, such negligence was sufficient to bar her right to recover. Therefore, assignment of error No. VIII is respectfully overruled.

Judgment will be entered dismissing the appeal and taxing the costs against the plaintiff-in-error.

Avery, P. J. (Western Section), and Bejach, J., concur.